**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-50734

(Summary Calendar)
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON ARTHUR COPSON,

Defendant-Appellant.


Appeal from the United States District Court
For the Western District of Texas
(A-95-CR-162-1)

September 17, 1997

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Jason Arthur Copson, a self-described computer and telephone "hacker," plead guilty to aiding and abetting the interstate transportation of stolen property in violation of 18 U.S.C. §§ 2 and 2314 and was sentenced to, among other things, 96 months of

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

imprisonment and a three-year term of supervised release. On appeal, Copson asserts that the district court erred in not allowing him to withdraw his guilty plea and in denying his motion for reduction in sentence based on diminished capacity. We affirm.

I

In September 1995, Copson entered into a plea agreement with the government. This agreement provided that "[i]f the Defendant fully complies with the terms of this plea agreement, and in addition provides substantial assistance to the United States in this and other criminal investigations, the United States Attorney for the Western District of Texas ["United States Attorney"] will file a motion for a downward departure pursuant to [United States Sentencing Guidelines] § 5K1.1." Section 5K1.1 provides in relevant part that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." The plea agreement then noted that "the determination as to whether or not the defendant has provided substantial assistance shall be made exclusively by the United States Attorney" and that the United States Attorney had "sole discretion" over the "decision to file a 5K1.1 motion . . . ."

Subsequently, Copson filed a motion to withdraw his guilty plea, asserting that the government had denied him an opportunity to provide substantial assistance in accordance with the plea

-2-

agreement and thus prevented him from qualifying for a § 5K1.1 departure.  Copson also asserted that his guilty plea was based on a prior plea agreement in which the government consented both to move for a § 5K1.1 departure and to recommend that his sentence run concurrently with a state sentence he was serving.[1]  Lastly, Copson maintained that, unbeknownst to him, the government changed the plea agreement before he signed it.  Copson later revoked his motion to withdraw his guilty plea and never renewed it.[2]

Prior to the sentencing hearing, a psychiatrist examined Copson and determined that he suffered from an obsessive-compulsive disorder, used self-mutilation for relaxation, and suffered from "**Diminished Capacity** at the time of his offense" (emphasis in original).  The psychiatrist also testified to this effect at the

---

[1]     In support of this contention, Copson relied on an unsigned draft of a plea agreement which was apparently faxed from the U.S. Attorney's Office to Copson in April 1995.  The draft agreement states in part that
> [i]f the Defendant fully complies with the terms of this plea agreement, and in addition provides substantial assistance to the United States in this and other criminal investigations, the United States Attorney . . . may file a motion for a downward departure pursuant to . . . § 5K1.1, and/or may request that the Court order that sentence in this matter run concurrently with the sentence that the defendant is now serving.

The draft agreement also notes that the United States Attorney had "sole discretion" over the "decision to file a 5K1.1 motion or request a concurrent sentence . . . ."

[2]     The Assistant United States Attorney ("AUSA") stated at the sentencing hearing that Copson "has agreed to withdraw his motion to withdraw his plea - in other words, to proceed with sentencing today."  Copson's attorney responded that "[m]y client has agreed that he would proceed . . . as well as withdraw[] his motion to vacate his plea previously filed."

sentencing hearing. In addition, Copson was evaluated by a psychologist employed by the Federal Bureau of Prisons who confirmed that Copson was suffering from a mental disease but could still "comprehend[] the charges against him and . . . provide reliable information to assist his attorney in his own defense."

Based on the evidence regarding Copson's mental state and its own observations, the district court decided at the sentencing hearing that Copson was sufficiently competent to understand the proceedings.[3] The court then considered Copson's motion for a downward departure based on diminished mental capacity pursuant to § 5K2.13 of the Guidelines. Section 5K2.13 provides that

> [i]f the defendant committed a non-violent offense while suffering significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

At one point during the sentencing hearing, the district court stated that "[d]iminished capacity, I guess, could come from various sources, from alcohol, from drugs." The court then confirmed that diminished capacity was a proper ground for departure under the Guidelines except when it resulted from the use

---

[3] The district court conducted Copson's first sentencing hearing on May 20, 1996. After hearing psychiatric testimony regarding Copson's mental health, the court held the proceedings in abeyance pending a 45-day mental health examination of Copson at the Bureau of Prisons. The sentencing hearing resumed on September 11, 1996, at which time the court found Copson competent enough to comprehend the proceedings.

of drugs or other intoxicants, and proceeded to hear argument over whether Copson should receive the § 5K2.13 departure. During this discussion, the prosecutor stated that in order to depart downward, the court should find some nexus between the diminished mental capacity and the offense. It is unclear from the record whether the court agreed with this comment.

Ultimately, the district court denied Copson's motion for downward departure and sentenced Copson to 96 months of imprisonment, a three-year term of supervised release, the payment of $320,513.60 in restitution, and a $50.00 special assessment. Copson appeals.

II

Copson first contends that the district court erred in failing to allow him to withdraw his guilty plea, and that this error deprived him of constitutional due process.

Copson filed a motion to withdraw his guilty plea shortly before his sentencing hearing because the government had allegedly breached the plea agreement by not filing a § 5K1.1 motion. Copson later withdrew this motion and affirmed his desire to plead guilty in open court. He never renewed the motion. Now, on appeal, Copson apparently maintains that the district court should have *sua sponte* struck his guilty plea because the government allegedly violated the plea agreement.

Where a defendant fails to preserve an objection to something affecting his substantial rights (e.g., does not object to a guilty

plea), we generally review the "mistake" he did not point to below for plain error. *See* FED. R. CRIM. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *United States v. Ruiz*, 43 F.3d 985, 988 (5th Cir. 1995) (stating that "unobjected-to errors" warrant plain error review). However, the Supreme Court has held that, where a defendant makes an objection, withdraws it, and then fails to renew it, the defendant has "waived" the objection and may not rely upon it as a ground for reversal. *Johnson v. United States*, 318 U.S. 189, 200-01, 63 S. Ct. 549, 554-55, 87 L. Ed. 704 (1943). We simply refuse to review a defendant's argument on appeal in such a situation because "we are not dealing here with inadvertence or oversight. This is a case where silent approval of the course followed by the court is accompanied by an express waiver of a prior objection . . . ." *Id.*

In this case, Copson moved to withdraw his guilty plea because the government allegedly breached the plea agreement. He then revoked the motion and failed to renew it. Now, he attempts to resurrect the motion on appeal under the pretext of alleging that the district court "erred" in "failing" to permit him to recant his guilty plea. However, we determine that, under *Johnson*, Copson has waived any objection to his guilty plea based on the government's alleged breach of the plea agreement, and that we may not consider his argument on that point.

Copson next avers that the district court erred in denying his motion under § 5K2.13 for a reduction in sentence based on diminished capacity. We lack jurisdiction to review a defendant's challenge to his sentence based merely upon his dissatisfaction with the court's refusal to grant a downward departure. *United States v. DiMarco*, 46 F.3d 476, 477 (5th Cir. 1995); *see also* 18 U.S.C. § 3742(a) (listing kinds of challenges to sentences permitted on appeal). Jurisdiction will lie, however, if the sentencing court's refusal to depart downward violated the law. *United States v. Akin*, 62 F.3d 700, 701 (5th Cir. 1995). A violation of law occurs if the court bases its refusal to depart downward on the mistaken assumption that it does not have the authority to do so. *Id.* In the absence of such a violation, however, this court will not disturb the sentencing court's discretionary decision not to depart downward. *United States v. Keller*, 947 F.2d 739, 740 (5th Cir. 1991).

Copson argues that we have jurisdiction to review the district court's refusal to grant him a § 5K2.13 departure because the district court mistakenly assumed that it did not have the authority to reduce his sentence under that section. Specifically, Copson asserts that the district court incorrectly believed that, to obtain a downward departure under § 5K2.13, a defendant's diminished capacity must be the sole cause of the crime and the

defendant must prove that he is insane.  In addition, he maintains that the court wrongly equated diminished mental capacity with use of alcohol or drugs, a comparison that § 5K2.13 specifically forbids.

On the first point, Copson maintains that the district court misapplied § 5K2.13 when it allegedly relied on the prosecutor's statement that there must be "some nexus between the problem he has and the offense that he committed; that it [in] some way contributed to the commission of the offense . . . ." Section 5K2.13 provides in relevant part that "a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense . . . ."  Contrary to Copson's assertion otherwise, there is no indication that the court believed that it could grant a § 5K2.13 departure only if Copson's diminished mental capacity was the *sole* reason he committed the offense.  In fact, the prosecutor's statement, which the district court may or may not have adopted, is an accurate paraphrase of one of the requirements of § 5K2.13.

Copson next asserts that the district court believed that it could only award a § 5K2.13 departure if Copson was insane, as opposed to merely suffering from diminished capacity.  The record reflects that the court relied upon the results of Copson's mental examinations to establish that he was competent for the purpose of

proceeding with the sentencing hearing.[4]  Moreover, both before and

after the court made that determination, the parties discussed at

length issues related to diminished capacity as it pertained to a

downward departure under § 5K2.13.[5]  There is no evidence that the

court confused the question of Copson's sanity for purposes of

proceeding with the sentencing hearing with its understanding of

diminished capacity as it relates to a § 5K2.13 departure.

In his third point, Copson contends that the court's statement

that "diminished capacity, I guess, could come from various

sources, from alcohol, from drugs . . ." reflected its incorrect

belief that diminished capacity was not a recognized basis for a

§ 5K2.13 departure.  Immediately after this statement, though, the

court clarified with the prosecutor that "diminished capacity from

---

[4]      Upon resumption of the sentencing hearing, the Court
stated that "[f]rom the standpoint of the legal definition of
sanity, [various experts] found and expressed to the court that
you were sane at the time of the [criminal] act or acts and also
at the present time.  So, then we proceed with this sentencing
hearing based on those representations . . . ."

[5]      For example, the psychiatrist who examined Copson
testified at the sentencing hearing that he was instructed to
give "an opinion about whether there was or was not diminished
capacity" for purposes of § 5K2.13, and "that's what I did."  The
prosecutor then confirmed that the psychiatrist was "just talking
now about whether [Copson] should be getting credit under"
§ 5K2.13.

a mental standpoint" was grounds for departure,[6] and the court subsequently entertained extensive argument on the issue.

We conclude that the district court was fully aware of its authority under § 5K2.13 to depart downward from the guideline range. The record clearly indicates that the court took into account Copson's mental condition in deciding not to depart downward, and the court's willingness to hear arguments regarding Copson's alleged diminished capacity further demonstrates its awareness of its authority to grant a § 5K2.13 departure. We find no violation of law in the court's exercise of its discretion here and, therefore, lack jurisdiction to review the district court's refusal to depart downward under § 5K2.13.

IV

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[6]    The following colloquy occurred between the district court and prosecutor:

THE COURT:  Diminished capacity . . . could come from various sources, from alcohol, from drug ))

MR. PITMAN:  Well, the guidelines don't recognize that circumstance.

THE COURT:  Diminished capacity from a mental standpoint is recognized?

MR. PITMAN: That's correct, Your Honor.  Anything that, in fact, is not induced by drug or alcohol.